[Cite as *State v. Cook*, 2011-Ohio-3829.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 95354**

---

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## SCOTT COOK

DEFENDANT-APPELLANT

---

## JUDGMENT:
## AFFIRMED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-530909

**BEFORE:** Kilbane, A.J., Celebrezze, J., and S. Gallagher, J.

**RELEASED AND JOURNALIZED:** August 4, 2011

**ATTORNEY FOR APPELLANT**

Joseph Vincent Pagano
P.O. Box 16869
Rocky River, Ohio 44116

**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor
Belinda Kyles-Gest
Assistant County Prosecutor
The Justice Center - 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

MARY EILEEN KILBANE, A.J.:

{¶ 1}  Defendant-appellant, Scott Cook, appeals from his conviction for attempted rape, in violation of R.C. 2907.02(A)(2).  Following a thorough review of the record, we affirm.

{¶ 2}  On November 13, 2009, defendant was charged pursuant to an eight-count indictment in connection with an alleged attack on K.S.,[1] a 92 year-old female resident at the Larchwood Village Retirement Community (Larchwood Village) in Cleveland. Counts 1 through 4 charged him with kidnapping with a sexual motivation specification.

---

[1]Pursuant to this court's policy, sexual abuse victims are not identified by their names in opinions.

Count 5 charged him with rape, in violation of R.C. 2907.02(A)(2), and Count 6 charged him with rape, in violation of R.C. 2907.02(A)(1)(c). Count 7 charged him with felonious assault, in violation of R.C. 2903.11(A)(1), and Count 8 charged him with assault, in violation of R.C. 2903.13(A).

**{¶ 3}** Defendant pled not guilty and waived his right to a jury trial. The matter proceeded to trial to the court on May 3, 2010.

**{¶ 4}** The State's evidence indicated that at about 11:00 p.m. on October 9, 2009, staff members of Larchwood Village entered the room of K.S. and observed the defendant, a 41-year-old patient at the facility, in the woman's bed. According to nursing assistant Elliott Groover, the woman, who suffers from dementia, was on her back, and defendant, who has paraplegia, was on his knees, with the woman's legs over his shoulders. Defendant's hospital gown was draped to the side, and a floor mat had been placed as a cover against the side of the bed.

**{¶ 5}** Defendant stated, "Oh f—," and Groover immediately left to get a nurse. When Groover returned seconds later, defendant said, "I'm sorry, I'm, sorry." At this time, defendant was on top of the woman, but her knees were no longer on his shoulders. Defendant then returned to his wheelchair and left the room.

**{¶ 6}** Groover admitted that there are times that the woman is very lucid and that she sometimes participates in activities at the facility.

**{¶ 7}** Charge nurse, Karen Smith, testified that an aide requested assistance in K.S.'s room. Smith and another nurse went into the room and Smith observed defendant in K.S.'s bed, straddled over her with his hands at her "private area." Smith testified that the woman, who had been given her evening sleeping pill approximately two hours earlier, was just lying there and appeared "out of it."

**{¶ 8}** According to Smith, defendant was drenched in sweat, his sweat pants were halfway down his legs, his genitals were exposed, and his catheter had been removed. The woman's incontinence briefs were on the floor next to the bed. Defendant repeatedly apologized. He was instructed to get dressed and leave, and at that point, defendant asked for an additional 10 or 15 minutes. K.S. had bruises around her wrists. Smith asked K.S. if she was hurt, and she said, "no, he was just a little rough." Smith also opined that it did not appear that K.S. and defendant were "having a relationship."

**{¶ 9}** Cleveland Police Officer Timothy Guerra (Officer Guerra) testified that in the early morning of October 10, 2009, he spoke with K.S. at Fairview General Hospital, and also spoke with staff from the Emergency Department. He then went to Larchwood Village Retirement Community and spoke with the defendant. At this time, defendant stated that he had been in K.S.'s bed because they were watching television together. Officer Guerra observed that defendant was wet, and he was able to transfer himself from his wheelchair to his bed. Officer Guerra collected K.S.'s bedding and clothing.

{¶ 10} Cleveland Police Detective Harold Thompson (Detective Thompson) testified that he also investigated the matter. He took photographs and also spoke with defendant, who had been transferred to Rudwick Manor. Detective Thompson was uncertain that defendant understood the questions so the detective stopped questioning him. During his interview of K.S., she did not remember the incident with defendant. He also obtained two of defendant's shirts, a pair of defendant's sweat pants.

{¶ 11} Cleveland Police Officer Robert Petchler testified that he obtained a patient gown from the retirement facility and the rape kit collected at Fairview General Hospital and logged them into the property room at the police district.

{¶ 12} Melissa Zielaskiewicz, a forensic scientist in the forensic biology DNA section of the Ohio Bureau of Criminal Identification and Investigation, testified that she analyzed evidence obtained in this matter. According to Zielaskiewicz, a cutting from a sheet contained a single DNA profile that was consistent with defendant's DNA. The expected frequency of occurrence of the DNA profile is one in 3,954,000,000,000,000,000 unrelated individuals.

{¶ 13} On cross-examination, she acknowledged that DNA could come from hair with a root, scaling skin, sweat, or urine, but she stated that this sample tested positive for semen. She also acknowledged that from the single DNA profile, she could not say with certainty that another individual was also on the sheet at the time defendant's DNA was deposited.

{¶ 14} Katherine Goellnitz, a Sexual Assault Nurse Examiner with Fairview General Hospital, testified that she examined K.S. in connection with this matter. Because K.S. had a history of incoherent episodes, Goellnitz obtained the consent of K.S.'s daughter in order to examine her. At this time, K.S. was cooperative, but Goellnitz had to reorient her as to the purpose of the examination. Goellnitz documented that there were marks on K.S.'s wrists and a crescent-shaped laceration and redness on the outer wall of her vagina. Goellnitz also required assistance from another worker in placing K.S.'s legs in position for the examination.

{¶ 15} On cross-examination, Goellnitz stated that K.S. was not coherent during the entire hour and a half examination.

{¶ 16} At the close of the State's case, the trial court entered a judgment of acquittal on the kidnapping charges and the felonious assault charge. Thereafter, the court acquitted defendant of the charge of assault and rape as alleged in Count 6, and convicted him of attempted rape as a lesser included offense of rape[2] as alleged in Count 5. On May 27, 2010, the court sentenced defendant to five years of imprisonment and five years of mandatory postrelease control.

{¶ 17} Defendant now appeals and assigns two errors for our review.

ASSIGNMENT OF ERROR ONE

---

[2]In *State v. Williams*, 74 Ohio St.3d 569, 1996-Ohio-91, 660 N.E.2d 724, the Supreme Court noted that attempted rape is a lesser included offense of rape.

**"The trial court erred when it denied Appellant's motion for acquittal under Crim.R. 29 because the state failed to present sufficient evidence to establish beyond a reasonable doubt the elements necessary to support the convictions."**

{¶ 18} Within this assignment of error, defendant asserts that the trial court erred in denying the motion for a judgment of acquittal of the charge of rape as alleged in Count 5 because there was no evidence of force and no evidence of sexual conduct.

{¶ 19} Crim.R. 29(A), which governs motions for acquittal, states:

**"The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses."**

{¶ 20} Pursuant to Crim.R. 29(A), "a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt."

*State v. Bridgeman* (1978), 55 Ohio St.2d 261, 381 N.E.2d 184, syllabus.

{¶ 21} Count 5 charged defendant with rape, in violation of R.C. 2907.02(A)(2), the elements of which are to "engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force."

{¶ 22} In this matter, the state presented evidence that defendant was in the bed of a 92 year-old woman who suffers from dementia. At this time, defendant was on his knees, with the woman's legs over his shoulders and his genitals were exposed. The woman, whose husband resides at the facility, appeared "out of it" and her incontinence

briefs were on the floor near the bed. When the nursing assistant entered the room, defendant stated, "Oh f—," and repeatedly said, "I'm sorry, I'm, sorry." According to the state's witnesses, the woman had appeared "out of it," had bruises around her wrists, a crescent-shaped laceration and redness on her vagina. She also said that defendant was "a little rough." Defendant admitted to police that he was in the woman's bed and a cutting from the sheet contained a single DNA profile that was consistent with defendant's DNA and also tested positive for semen.

{¶ 23} From this evidence, the trial court did not err in refusing to enter a judgment of acquittal on the rape charge set forth in Count 5 of the indictment. Accord *State v. Williams* (Mar. 24, 1995), Trumbull App. No. 89-T-4210 (trial court did not err in denying Crim.R. 29 motion for acquittal as to charge of rape where defendant was ultimately convicted of the lesser included charge of attempted rape).

{¶ 24} This assignment of error is overruled.

ASSIGNMENT OF ERROR TWO

**"Appellant's convictions are against the manifest weight of the evidence."**

{¶ 25} In determining whether a conviction is against the manifest weight of the evidence, the appellate court sits as a "thirteenth juror" and disagrees with the factfinder's resolution of the conflicting testimony. *State v. Thompkins,* 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 54, citing *Tibbs v. Florida* (1982), 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652. The reviewing court must examine the entire

record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether the jury "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. " Id., quoting *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717.

{¶ 26} The appellate court may not merely substitute its view for that of the jury, and reversal on manifest weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction." Id., quoting *Martin*.

{¶ 27} In this matter, after examining the entire record, weighing the evidence and all reasonable inferences, we are unable to conclude that the court clearly lost its way and created such a manifest miscarriage of justice in convicting defendant of the offense of attempted rape. Based upon the eyewitness observations of the workers at the nursing home, the woman's physical condition, defendant's statements, and the DNA evidence identifying defendant, reasonable minds could conclude that defendant attempted to engage in sexual conduct with the woman by force or threat of force.

{¶ 28} The second assignment of error is without merit and overruled.

{¶ 29} Defendant's conviction is affirmed.

It is ordered that appellee recover from appellant the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MARY EILEEN KILBANE, ADMINISTRATIVE JUDGE

FRANK D. CELEBREZZE, JR., J., and
SEAN C. GALLAGHER, J., CONCUR